

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00691-CV

**IN THE INTEREST OF C.S.-L.V.**, L.J.V., and C.C.V.

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-02681
Honorable Richard Garcia, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  March 14, 2018

AFFIRMED

Brittany[1] appeals the trial court's order terminating her parental rights to her children, C.S.-L.V. (born in 2011), L.J.V. (born in 2014), and C.C.V. (born in 2016). She contends there is legally and factually insufficient evidence that termination of her parental rights is in the children's best interest. We affirm the trial court's judgment.

### BACKGROUND

The Department of Family and Protective Services filed a petition to terminate Brittany's parental rights. The Department removed the children based on allegations of drug use by and domestic violence between Brittany and the children's father. The case proceeded to a bench trial,

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, parents are referred to by their first names and children are referred to by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

at which Brittany and Department caseworkers Alysha Kraft and Stephanie Banks testified. The trial court thereafter terminated Brittany's parental rights to the children,[2] finding she knowingly endangered the children, constructively abandoned the children, used a controlled substance in a manner that endangered the children, and failed to comply with provisions of her court-ordered family service plan. The trial court also found termination of her parental rights was in the children's best interest. Brittany appeals, challenging only the legal and factual sufficiency of the evidence to support the trial court's best-interest finding.

## STANDARD OF REVIEW

A judgment terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found

---

[2] The trial court also terminated the parental rights of the children's father, who has not appealed the order terminating his parental rights.

incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id.* When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

### CHILDREN'S BEST INTEREST

The best-interest determination is a wide-ranging inquiry, and the Texas Supreme Court has set out some factors relevant to the determination:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the best interest of the child;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;
- the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest." *In re O.N.H.*,

401 S.W.3d at 684 (internal citation omitted). "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.).

**A. The Evidence**

Caseworker Kraft testified the children came into the Department's care due to concerns about the parents' drug use and domestic violence. She testified the children's father admitted to marijuana usage, neglect, and domestic violence, but that Brittany denied all of the allegations. Kraft stated Brittany tested positive for methamphetamines, and that her main concern for Brittany was drug treatment. Kraft also stated that to the best of her knowledge, Brittany had done nothing to address her drug use.

Kraft further testified Brittany was given a family service plan that included services for domestic violence, individual counseling, mental health assessments, and parenting. According to Kraft, Brittany had not completed any of those services and did not give any reason for not engaging in those services other than stating "she did not believe she needed services." Furthermore, Kraft testified Brittany had no visits with the children, did not provide anything for the children's birthdays, and provided no financial support. She also stated Brittany refused to provide information about her living arrangements.

Kraft testified the children were placed with their paternal grandmother, and the children have a strong bond with her. She testified the children's grandmother wants to care for the children permanently. Kraft stated that when the children came into the Department's care, the children were delayed academically and socially; they complained about a lack of food and ate "onions straight of the refrigerator"; and the oldest child C.S.-L.V. acted as a parent for his younger siblings. According to Kraft, the children have improved while they have been in their grandmother's care and are now in therapy.

Kraft also noted there was an incident when Brittany went to see the children at their grandmother's house "at about 3:00 o'clock in the morning." She stated the children's grandmother called the police and Brittany was transported away. Kraft opined that this incident was disruptive and adversely impacted the children. She explained C.C.V. had fewer sudden outbursts and incidents of physical aggression during his stay with his grandmother, but after the 3:00 a.m. incident with Brittany, his behavior deteriorated before improving again.

Caseworker Banks testified Brittany admitted using drugs and also tested positive for methamphetamines. She testified Brittany failed to engage in any of her services or provide an explanation for that failure. Banks stated her main concerns with Brittany and the children's father was domestic violence, drug use, and the failure to participate in any of the recommended services. Banks testified C.C.V., Brittany, and the children's father all stated there was domestic violence in the parents' relationship, and Brittany would have bruises on her arm, appear "under the influence," and become "irate and hostile and not want to answer questions."

Brittany testified she attended "12-step meetings" and counseling, has "done research," and she planned to start domestic violence classes after the trial had started. She also stated she had just obtained her ID, planned to get a job, and that her home does not currently have a place for the children to stay and sleep and have their own room. Brittany described a situation when C.S.-L.V. shook C.C.V. when he was an infant and she took C.C.V. to the hospital. Brittany testified she "was covered in bruises, so [the Department was] alerted." Brittany denied that she actually used drugs, and said her admission about using drugs was made out of fear. She also explained that when she visited the children at their grandmother's house at 3:00 a.m., she had recently learned her best friend and her two children were "hit and killed by car" and she "did not want to be that person who hadn't gotten to say goodbye to [her] kids in case it happened to [her]."

**B. Analysis**

Although there was no direct evidence of the children's desires, there is evidence that the children were bonded with their grandmother. There is also evidence showing a pattern of domestic violence and Brittany's drug use, and that Brittany refused to address those issues. Furthermore, the evidence supports an inference that Brittany lacks employment and a suitable home for the children. Additionally, there is evidence showing the children have improved in their grandmother's care, and that their grandmother is meeting the physical and emotional needs of the children. Having considered all of the evidence admitted at trial, we hold a reasonable factfinder could form a reasonably firm belief or conviction that termination of Brittany's parental rights is in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266.

CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice